IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLEN CARLSON,<br>　　　　　Plaintiff | )<br>)<br>)　C.A. No. 22-258 Erie<br>) |
| v. | )<br>)　District Judge Susan Paradise Baxter |
| OAK MANOR, INC.,<br>　　　　　Defendant. | )<br>)<br>) |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

 **A.** **Relevant Procedural History**

On August 2, 2022, Plaintiff Ellen Carlson filed a complaint against Defendant Oak Manor, Inc., asserting claims of disability discrimination and retaliation under both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12133, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* Defendant filed an answer to Plaintiff's complaint on November 21, 2022 [ECF No. 3], and the parties have since completed discovery.

Presently pending before the Court is Defendant's motion for summary judgment [ECF No. 21], in which Defendant contends that Plaintiff has not presented a *prima facie* case of disability discrimination or retaliation, nor provided evidence of pretext for her demotion, and that Defendant has proffered a legitimate, nondiscriminatory justification for Plaintiff's demotion in any event. Plaintiff has filed a response in opposition to Defendant's motion [ECF No. 26], and Defendant has filed a reply brief [ECF No. 27]. This matter is now ripe for consideration.

1

### B.   Relevant Factual History[1]

Defendant is a private nonprofit corporation located in St. Mary's, Pennsylvania, that provide group homes for intellectually disabled adults. (ECF No. 22, at ¶ 3). Defendant hired Plaintiff on March 7, 2000 as an Emergency Relief Residential Program Worker, and she was subsequently promoted to permanent Residential Program Worker. (Id. at ¶¶ 9-10). In or around 2002, Plaintiff was promoted to the position of Residential Program Supervisor at Oak Manor Building 5 ("OM5"), where she worked until her resignation on January 11, 2022, after Defendant demoted her. (Id. at ¶¶ 10-11; ECF No. 26-2, at ¶ 11).

Deborah Fehrenbach ("Fehrenbach") was employed as Defendant's CEO for over thirty-one years and held the position of CEO throughout Plaintiff's employment. (Id. at ¶¶ 5-6). Fehrenbach was responsible for hiring Plaintiff and completed a performance evaluation on her annually. (Id. at ¶ 12). During the course of Plaintiff's employment, Defendant received several brief notes from Penn Highlands Behavioral Health ("Penn Highlands"). (Id. at ¶ 18). On August 4, 2020, Plaintiff presented Defendant with a report from Penn Highlands stating that she could not work more than 40 hours a week in order to comply with her medication and healthcare regimen; however, Plaintiff told Fehrenbach that the report was "wrong" and that she would get a different one. (Id. at ¶¶ 19-20). The next day, Plaintiff presented an updated report from Penn Highlands indicating that she should be excused from overnight shifts as this "impedes on her medication regimen." (Id. at ¶ 21). Nonetheless, Plaintiff's job did not require her to work overnight because she had the authority and ability to get coverage for her shift when needed. (Id. at ¶ 22). On November 23, 2021, Plaintiff presented another note from Penn Highland

---

[1] The factual history set forth herein is primarily derived from Defendant's concise statement of material facts [ECF No. 22], to the extent such facts are undisputed by Plaintiff in her response [ECF No. 26-2] and/or are fully supported by the record evidence.

2

stating that she had received services on that date; however, the report did not recommend any restrictions and Plaintiff did not request any accommodations after the appointment. (Id. at ¶¶ 23-25).

On December 23, 2021, Fehrenbach received an email from Gabi Haines ("Haines"), who had been employed with Defendant as a Residential Program Worker under Plaintiff's supervision until she resigned on September 6, 2021. (Id. at ¶¶ 27-28, 30). In her email to Fehrenbach, Haines explained that she had moved to the State College area and was in the process of divorcing her husband, David Glant ("Glant"), and that Plaintiff had sent a Facebook message to Glant accusing Haines of telling her co-workers that he had molested their daughters. (Id. at ¶¶ 29-30, 32). In her email, Haines stated her belief that Plaintiff made these statements because she was angry that Haines had quit her job and that both Haines and Glant were contemplating filing "defamation of character charges" against Plaintiff. (Id. at ¶¶ 33-34; ECF No. 26-4, at p. 72). Fehrenbach forwarded Haines' email to Plaintiff minutes after receiving it, with a note stating, in part, "STAY OUT OF GABI'S LIFE AND BUSINESS!!!!!!!!!!" (Id. at ¶ 36; ECF No. 26-2, at ¶ 36; ECF No. 26-4, at p. 71). In response, Plaintiff admitted sending the Facebook message to Glant, but noted that "the things [she] said to [Glant] did not occur on work time" and that she "only told him what [Haines] told all of us daily." (Id. at ¶ 30, 37; ECF No. 26-2, at ¶ 37; ECF No. 26-4, at p. 71).

Fehrenbach documented her decision to demote Plaintiff in a disciplinary report dated January 6, 2022. (Id. at ¶ 39). The disciplinary report was prompted by the email Fehrenbach had received from Haines on December 23, 2021, stating that Plaintiff's involvement in the personal matters of an employee "was inappropriate, unprofessional, defamatory, none of her business, and also undignified," and that "[a]s a supervisor, [Plaintiff] must stay out of the employees'

3

personal lives." (ECF No. 22-2, at p. 35). As a result, the report indicated that Plaintiff was being demoted to the position of Residential Program Worker effective January 10, 2022, and her salary was reduced by ten percent (10%). (Id.). Fehrenbach met with Plaintiff to review the disciplinary report on January 6, 2022, and created a document memorializing the meeting. (ECF No. 22, at ¶¶ 39, 41; ECF No. 22-2, at p. 37). During the meeting Plaintiff was given the option of working the Tuesday through Thursday shift at OM5, which Plaintiff said she would do, "but she didn't know for how long." (ECF No. 22-2, at p. 37). Later, Plaintiff called Fehrenbach and said she would rather work the Sunday through Tuesday shift because of her bowling league and Fehrenbach said it was fine with her, but that she needed to work out the schedule with Letitia Bauer. (ECF No. 26-2, at ¶ 44).

After Plaintiff's demotion, Defendant received another medical report from Penn Highlands dated January 10, 2022, indicating that Plaintiff was receiving services for her symptoms and recommending that she be off work until she could be re-evaluated on January 17, 2022. (Id. at ¶ 44). At that time, Plaintiff had not worked since January 6, 2022. (Id. at ¶ 45). On January 11, 2022, Plaintiff resigned from her position via email stating that she was unable to do shift work because of her medication. (Id. at ¶ 47).

## II. DISCUSSION

### A. Disability Discrimination Claims[2]

"Under the ADA, employers are prohibited from discriminating 'against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

---

[2] The claims of disability discrimination under the ADA and PHRA will be collectively addressed under the ADA framework. See Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999) ("the analysis of an ADA claim applies equally to a PHRA claim"); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (treating PHRA and ADA claims coextensively).

4

compensation, job training, and other terms, conditions, and privileges of employment.'" Taylor v. Phoenixville School Dist., 184 F.3d 296, 305 (3d Cir. 1999), citing 42 U.S.C. § 12112(a).

To establish a *prima facie* case of discrimination in violation of the ADA, a plaintiff must demonstrate that: (i) she is "disabled" as defined by the ADA; (ii) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (iii) she has suffered an adverse employment decision as a result of discrimination. Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998), citing Shiring v Runyon, 90 F.3d 827, 831 (3d Cir. 1996). If the plaintiff presents evidence establishing a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the action. Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998). The defendant satisfies this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). If the employer is able to fulfill this requirement, it is then Plaintiff's burden to prove that the legitimate reasons offered by the employer were not its true reasons, but, rather, were pretext for unlawful discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Pivirotto v. Innovative Sys., Inc., 191 F.3d 344 (3d Cir. 1999).

Here, Defendant contends that Plaintiff's disability discrimination claims are fatally deficient for three reasons: (1) Plaintiff has failed to meet her burden of proving the third element of her *prima facie* case, because "there is no evidence that she was demoted as a result of discrimination" (ECF No. 23, at p. 10 (emphasis in original)); (2) Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's demotion; and (3) Plaintiff has failed to present evidence of pretext for her demotion. Each of these arguments will be considered in turn.

5

1.  **Causation Between Alleged Disability and Plaintiff's Demotion**

"To survive summary judgment, Plaintiff 'must provide evidence that supports a logical inference of causation between the alleged disability and the adverse employment action[ ].'" Rubano v. Farrell Area Sch. Dist., 991 F.Supp.2d 678, 701 (W.D. Pa. 2014), quoting Mengel v. Reading Eagle Co., 2013 WL 1285477, at *4 (W.D. Pa. Mar. 29, 2013 (citation omitted). "'The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." McGarvey v. TE Connectivity, Ltd., 2018 WL 3584977, at *5 (M.D. Pa. July 26, 2018), quoting Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 178 (3d Cir. 1997). Close "temporal proximity," between the protected status or action by the employee and the adverse action by the employer, is suggestive but not determinative of causation. Emmell v. Phoenixville Hosp. Co., LLC, 303 F. Supp. 3d 314, 332 (E.D. Pa. 2018) citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000).

Here, Plaintiff argues that "the trail of communications leading up to Defendant's demotion in January 2022 presents unusually suggestive temporal proximity." (ECF No. 26, at p. 9). In particular, Plaintiff notes the following: (1) on August 5, 2020, Plaintiff submitted a medical note to Defendant requesting that she be excused from overnight shifts because it impeded her medication regimen; (2) On October 7, 2021, Plaintiff emailed Fehrenbach stating "I'm not the best at handling stress. I get anxiety on top of it and then my mental health kicks in (living with mental health issues is not fun)" (ECF No. 26-4, at p. 65); and (3) on November 22, 2021, Plaintiff emailed Fehrenbach stating that "my mental health is bad" (Id. at p. 67). Though this "trail of communications" is sparse and largely nonspecific, it was enough to place Fehrenbach on notice that Plaintiff was dealing with some mental health issues related to stress and anxiety. This may have led Fehrenbach to note in her disciplinary report of January 6, 2022,

that she "honestly believe[d] that having less responsibility and less stress [would] be a positive thing for [Plaintiff]." (Id. at p. 69). Indeed, Fehrenbach reiterated the same sentiment during her meeting with Plaintiff on the same date when, according to Fehrenbach's notes, she told Plaintiff that she "thought the stress was hard on [Plaintiff] and she would feel better with less responsibility." (Id. at p. 70). Whether these statements provide evidence of a discriminatory motive for the demotion or were merely intended to appease Plaintiff is patently unclear; however, they are minimally sufficient to "support a logical inference of causation" between Plaintiff's alleged disability and her demotion. Thus, the Court finds that Plaintiff has sufficiently established a *prima facie* case of disability discrimination.

### 2. Legitimate, Nondiscriminatory Reason

Defendant contends that it had a legitimate, nondiscriminatory reason for Plaintiff's demotion; namely, that she had inappropriately involved herself in the personal matters of a former employee. Plaintiff has not refuted this contention. To the contrary, Plaintiff acknowledged during her deposition (ECF No. 22-1, at pp. 24-25), and in her email correspondence after her demotion (ECF No. 22-3, at pp. 2-4), that she was demoted, at least in part, because she inappropriately involved herself in the personal matters of an employee. Thus, Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for Plaintiff's demotion.

### 3. Pretext

The remaining question is "whether sufficient evidence exists from which the jury could find by a preponderance of the evidence that [Defendant's] explanation[] offered for its adverse employment decision[] [was] merely a pretext for unlawful [discrimination]." Marra v. Philadelphia Housing Auth., 497 F.3d 286, 306 (3d Cir. 2007). In order to establish pretext,

Plaintiff must present evidence—direct or circumstantial—from which a reasonable jury could: (1) disbelieve Defendant's legitimate, nondiscriminatory reasons for demoting her; or (2) believe that it is more likely than not that Defendant demoted her because of her alleged disability, *i.e.*, that, but-for her alleged disability, Defendant would not have demoted her. Fichter v. AMG Resources Corp., 528 Fed. Appx. 225, 228 (3d Cir. 2013). citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). To convince a jury to disbelieve Defendant's proffered reasons for demoting Plaintiff, Plaintiff must discredit each legitimate, nondiscriminatory reason for her termination. Id. This discrediting can take the form of establishing that Defendant's reasons suffered from "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that a reasonable factfinder could find them unworthy of credence. Marra, 497 F.3d at 306. This Plaintiff cannot do.

Despite Plaintiff's attempts to demonstrate inconsistencies and contradictions in Defendant's proffered reason for her demotion,[3] Plaintiff cannot overcome the fact that she has acknowledged in her own words that she was demoted, at least in part, because she inappropriately involved herself in the personal matters of an ex-employee. In particular, the Court notes the following exchange that took place during Plaintiff's deposition regarding the disciplinary report Plaintiff received from Fehrenbach on January 6, 2022:

> Q.  So [Fehrenbach's] telling you in this [disciplinary report] that you're being demoted because you involved yourself in the personal matters of an employee and that that was inappropriate as a supervisor and unprofessional. Correct? That's what this says?
>
> A.  Right.
>
> Q.  **Do you not believe this was the real reason you were demoted?**

---

[3] In particular, Plaintiff notes her positive performance evaluations during the preceding two years in contrast to Fehrenbach's post-hoc collection of letters from Plaintiff's former co-workers highlighting Plaintiff's work performance issues, and calls into question Defendant's reliance on the credibility of Haines' email.

> A. **I believe it was half, yes.**
>
> Q. What was the other half?
>
> A. That she did not like me and that it was all stemming from the investigation. And this just happened to be the cake that took the icing.
>
> Q. The investigation that you mentioned before that involved the Area Agency on Aging?
>
> A. Yes.

(ECF No. 22-1, at pp. 24-25) (emphasis added).

This testimony is consistent with Plaintiff's stated beliefs regarding the reasons for her demotion that she wrote in an email dated January 10, 2022:

> I have worked for Oak Manor since 3/7/2000. I was a Supervisor until 1/6/22 (CEO dated letter 1/10/22). The CEO [Fehrenbach] demoted me for a [sic] incident with a x-employee, in which she had told us that her husband had molested her girls and their friends.... I believe this is still part of her retaliating due to Area of Aging doing a [sic] investigation in Oct-2021. [Fehrenbach] had a meeting with us pounding the table and screaming at us. She called staff liars and we were in need of help....

(ECF No. 22-3, at pp. 2-4).

The foregoing statements not only evidence Plaintiff's belief that she was demoted, in part, for the reason proffered by Defendant, they also indicate that the alternative reasons for which she believed she was demoted – ie., Fehrenbach didn't like her and was retaliating for Plaintiff's part in an Area Agency on Aging investigation - had nothing to do with Plaintiff's alleged disability.

Thus, the Court finds that Plaintiff is unable to convince a jury by a preponderance of the evidence that Defendant's legitimate, nondiscriminatory reason for demoting her is not worthy of belief, or that it is more likely than not that Defendant demoted her because of her alleged disability. As a result, summary judgment will be granted in favor of Defendant on Plaintiff's disability discrimination claims.

### B. Retaliation

Plaintiff contends that she was demoted in retaliation for requesting a reasonable accommodation for her alleged disability.

To establish a *prima facie* case of retaliation under the ADA (and PHRA), a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Krouse v. American Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997) (citations omitted). If an employee establishes a *prima facie* case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. Id. If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. Id.

Defendant argues that it is entitled to summary judgment on this claim because Plaintiff cannot establish a causal connection between her alleged request for accommodation and Defendant's decision to demote her. (ECF No. 23, at p. 15). The Court agrees.

Plaintiff's claim is primarily based on the doctor's note dated August 5, 2020, that requested Defendant to excuse Plaintiff from any overnight shifts because it would impede her medication regimen. (ECF No. 26, at p. 18; ECF No. 26-4, at p. 61). However, it is beyond dispute that Plaintiff was not required to work overnight shifts at any time during the sixteen-month period prior to her demotion in January 2022. Thus, in effect, Plaintiff was provided the requested accommodation.

Nonetheless, Plaintiff asserts that Fehrenbach "jumped at the opportunity presented by [Haines' email] to punish [Plaintiff] for requesting no overnight shifts" by demoting her to a position that required her to work overnight shifts. (ECF No. 26, at p. 19). However, since Plaintiff never worked in her new role after her demotion, her claim that she would be required to work overnight shifts is purely speculative and is, in fact, unsupported by the record. Indeed, Fehrenbach testified that, although the shifts of Residential Program Workers were comprised of 56-hour blocks of time at the facility, it was legally mandated that each worker receive 8 hours of sleep, which would allow Plaintiff to maintain her medication regimen in her new role. (ECF No. 22-1, at pp. 41-42). Although Plaintiff points out that Fehrenbach also testified that staff was usually "on call during their sleep periods," Fehrenbach clarified that this was not the case at OM-5, where Plaintiff would be working in her new role, because OM-5 employed an "awake staff" that is awake during the night to allow Residential Program Workers to sleep. (Id.). Thus, the evidence of record fails to support Plaintiff's claim that her requested accommodation would not be provided in her new position, thus debunking her contention that her demotion was in any way causally connected to her accommodation request.

Since Plaintiff is unable to prove a causal connection between her requested accommodation and her demotion, she cannot establish a *prima facie* case of retaliation. Moreover, even if Plaintiff could establish a *prima facie* case, she is unable to convince a factfinder both that Defendant's proffered explanation for her demotion was false, and that retaliation was the real reason for the adverse employment action. Thus, Defendant will be granted summary judgment on Plaintiff's retaliation claims.

An appropriate Order will follow.